## UNITED STATES DISTRICT COURT FOR THE
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| ANA LIDIA ALPIZAR-FALLAS, individually and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>vs.<br><br>FRANK E. FAVERO; JOHN DOE 1-5, JOHN DOE INCORPORATED 1-5 (fictitious designation), BRIAN BARBOSA and PROGRESSIVE GARDEN STATE INSURANCE COMPANY,<br><br>          Defendants. | Civil Action No.: 3:17-cv-02768-MAS-LHG<br><br><br>(**Document Electronically Filed**) |

---

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS

---

**BRACH EICHLER LLC**
101 Eisenhower Parkway
Roseland, New Jersey 07068-1067
(973) 228-5700

*Attorneys for Plaintiff*

Of Counsel & On the Brief:

    Charles X. Gormally, Esq. (CG2979)
    Thomas Kamvosoulis, Esq. (TK0348)

BE:9108427.1/ALP055-271607

**TABLE OF CONTENTS**

Page

PRELIMINARY STATEMENT ............................................................................1

STATEMENT OF FACTS ..................................................................................3

    I.      INTRODUCTION ............................................................................3

    II.    PROGRESSIVE ENGAGES IN A FRAUDULENT SCHEME TO DEPRIVE PLAINTIFF INSURANCE BENEFITS ....................................3

    III.   THE SECOND AMENDED CLASS ACTION COMPLAINT ............................5

LEGAL ARGUMENT .......................................................................................6

    I.      STANDARD OF REVIEW ................................................................6

    II.    THE THIRD CIRCUIT HAS EXPRESSLY HELD THE CFA APPLIES TO SCHEMES TO DEFRAUD POLICYHOLDERS OF THEIR BENEFITS ...........6

    III.   PLAINTIFF EASILY SATISFIES THE ELEMENTS OF A CFA CLAIM IN THE CLASS ACTION COMPLAINT ...............................................11

             A.    Defendants Engaged In Unlawful Conduct Under The CFA ...................12

             B.    Plaintiff Suffered Ascertainable Loss Because She Was Defrauded Out Of The Full Extent Of Her Available Insurance Benefits..................12

             C.    Plaintiff Has Sufficiently Alleged A Causal Connection Between The Unlawful Conduct And The Loss Of Insurance Benefits ........................14

    IV.   IN THE EVENT THE COURT FINDS PLAINTIFF'S CFA CLAIM TO BE DEFICIENT, LEAVE TO FILE A CURATIVE AMENDMENT SHOULD BE GRANTED ...............................................................................14

CONCLUSION.................................................................................................16

# TABLE OF AUTHORITIES

**Page(s)**

CASES

Alston v. Parker,
363 F.3d 229 (3d Cir. 2004)........................................................................................14

Ashcroft v. Iqbal,
556 U.S. 662 (2009)........................................................................................................6

Bannon v. Allstate Insurance Co.,
Civ. A. No. 14-1229, 2015 WL 778828 (D.N.J. Feb. 24, 2015) ..............................8

Bartels v. Hudson Insurance Co.,
Civ. A. No. 05-3890, 2008 WL 5070660 (D.N.J. Nov. 24, 2008)............................8

Beekman v. Excelsior Insurance Co.,
Civ. A. No. 14-363, 2014 WL 674042 (D.N.J. Feb. 21, 2014) ................................8

Bell Atlantic Corp. v. Twombly,
550 U.S. 544 (2007)........................................................................................................6

Clements v. Sanofi-Aventis, U.S., Inc.,
111 F. Supp.3d 586 ......................................................................................................14

Cox v. Sears Roebuck & Co.,
138 N.J. 2 (1994) ..........................................................................................................11

Dewey v. Volkswagen AG,
558 F. Supp.2d 505 (D.N.J. 2008) ............................................................................11

Dzielak v. Whirlpool Corp.,
26 F. Supp.3d 304 ........................................................................................................13

Farley v. GameStop Corp.,
Civ. A. No. 12-4734, 2013 WL 4042434 (D.N.J. Aug. 7, 2013)............................14

Fowler v. UPMC Shadyside,
578 F.3d 203 (3d Cir. 2009)..........................................................................................6

Francis E. Parker Memorial Home, Inc. v. Georgia-Pacific LLC,
945 F. Supp.2d 543 (D.N.J. 2013) ............................................................................11

Furst v. Einstein Moomjy, Inc.,
182 N.J. 1 (2004) ..........................................................................................................11

Giordano v. Saxon Mortgage Services, Inc.,
  Civ. A. No. 12-7937, 2014 WL 4897190 (D.N.J. Sept. 30, 2014) .........................................13

Gonzalez v. Wilshire Credit Corp.,
  207 N.J. 557 (2011) ..............................................................................................................11

Harnish v. Widener University School of Law,
  931 F. Supp.2d 641 (D.N.J. 2013) ........................................................................................14

Hedges v. United States,
  404F.3d 744 (3d Cir. 2005)......................................................................................................6

Maniscalco v. Brother International Corp.,
  627 F. Supp.2d 494 (D.N.J. 2009) ........................................................................................13

Marcus v. BMW of North America, LLC,
  687 F.3d 583 (3d Cir. 2012)............................................................................................12, 13

Miller v. American Family Publishers,
  284 N.J. Super. 67 (Ch. Div. 1995) .................................................................................12, 13

Myska v. New Jersey Manufacturers Insurance Co.,
  440 N.J. Super. 458 (App. Div. 2015) ...................................................................................10

Nationwide Mutual Insurance Co. v. Caris,
  170 F. Supp.3d 740 ................................................................................................................10

Phillips v. County of Allegheny,
  515 F.3d 224 (3d Cir. 2008).....................................................................................................6

Pierzga v. Ohio Casualty Insurance Co.,
  208 N.J. Super. 40 (App. Div. 1986) .....................................................................................10

Ramirez v. STI Prepaid LLC,
  644 F. Supp.2d 496 (D.N.J. 2009) ............................................................................11, 12, 13

Robert J. v. Liberty Mutual Insurance Co.,
  Civ. A. No. 14-06308, 2015 WL 4138990 (D.N.J. July 8, 2015)...................................8, 9, 12

Spence v. ESAB Group, Inc.,
  623 F.3d 212 (3d Cir. 2010)......................................................................................................7

Tirri v. Flagship Resort Development Corp.,
  Civ. A. No. 3:16-1771, 2016 WL 6123146 (D.N.J. Oct. 19, 2016).........................................13

Union Ink Co., Inc. v. AT&T Corp.,
  352 N.J. Super. 617 (App. Div. 2002) ..............................................................................12, 13

Van Holt v. Liberty Mutual Insurance Co.,
    163 F.3d 161 (3d Cir. 1998)..................................................................................................10

Volin v. General Electric Company,
    189 F. Supp.3d 411 ..........................................................................................................13

Weiss v. First Unum Life Insurance Company,
    482 F.3d 254 (3d Cir. 2007)............................................................................... passim

## PRELIMINARY STATEMENT

Defendant Progressive Garden State Insurance Company ("Progressive") preys upon victims of motor vehicle accidents to reduce the amount of benefits paid to its insured. Progressive's scheme involves the following pattern of conduct:  (1) identify an insured who was injured in a motor vehicle accident with another Progressive insured; (2) send a representative to personally visit the insured shortly after the accident; (3) falsely represent to the insured that certain paperwork must be signed immediately to expedite the claims process; (4) present the insured with documents that include a comprehensive general release of all claims against all parties, including Progressive; (5) make no mention of the release provisions or their legal significance; and (6) induce the insured to sign the documents by promising prompt payment.

In this action, Plaintiff Ana Lidia Alpizar-Fallas ("Plaintiff") alleges Progressive and one of its claims adjusters, Defendant Bryan Barbosa ("Barbosa"), engaged in this scheme to deprive her the full extent of her rights and benefits under her insurance policy – *the day after she was seriously injured in a motor vehicle accident*.  Based upon this nucleus of facts, Plaintiff asserts a cause of action under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* ("CFA"), seeking injunctive relief, compensatory and treble damages, counsel fees and costs, individually and on behalf of all similarly situated policyholders.

In response, Progressive and Barbosa (collectively, "Defendants") filed this Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b).  Defendants make two baseless arguments.  First, they argue the CFA does not apply to schemes to defraud policyholders of their insurance benefits.  This argument contradicts binding precedent.  Indeed, the Third Circuit Court of Appeals has specifically held the CFA applies to precisely this type of fraudulent conduct.  Second, Defendants argue Plaintiff has failed to adequately plead the elements of a CFA claim.  This argument strains credulity.  Plaintiff has alleged an unlawful practice (a

fraudulent scheme to deprive her of insurance benefits), an ascertainable loss (the loss of insurance benefits) and a causal relationship (but for the fraudulent scheme, Plaintiff would not have lost her insurance benefits). These allegations easily satisfy the CFA's pleading requirements.

Defendants have defrauded hundreds, if not thousands, of their policyholders by engaging in an unconscionable commercial practice and have now been caught in the act. Their motion is nothing more than an attempt to slink away and avoid liability for this truly despicable behavior. This application must be denied.

## STATEMENT OF FACTS

### I.    INTRODUCTION

On December 14, 2014, Plaintiff was a passenger in a motor vehicle traveling northbound on Route 206 in Hillsborough, New Jersey.  *See Second Amended Class Action Complaint ("Complaint") ¶ 9.*[1]  While she was stopped at a traffic light, a motor vehicle owned and operated by Frank Favero ("Favero") struck Plaintiff's motor vehicle in the rear, causing her serious personal injuries.  *See Complaint ¶¶ 14-16.*   Plaintiff and Favero both had automobile insurance through Progressive, with policies that were valid and enforceable at the time of the accident. *See Complaint ¶¶ 11-12.*

Immediately following the accident, an ambulance transported Plaintiff to Robert Wood Johnson University Hospital, located in Somerset, New Jersey.  *See Complain, ¶ 25.*  Since then, Plaintiff has received ongoing medical treatment for her injuries at a great expense to her; has suffered a loss of earning capacity; and has endured pain, suffering and mental anguish.  *See Complaint ¶¶ 18-20.*

### II.   PROGRESSIVE ENGAGES IN A FRAUDULENT SCHEME TO DEPRIVE PLAINTIFF INSURANCE BENEFITS

At approximately 8:00 a.m. the next morning, Bryan Barbosa, a Progressive claims adjuster, contacted Plaintiff by telephone.  *See Complaint ¶ 27.*  During this call, Barbosa advised Plaintiff that "he was in the neighborhood" and wanted to visit Plaintiff, inspect the damage to her vehicle and have her sign paperwork that would expedite payment of her claim. *See Complaint ¶ 28.*   About an hour later, Barbosa arrived at Plaintiff's residence and produced multiple documents for Plaintiff to sign.  *See Complaint ¶ 29.*

---

[1]    The Complaint is attached to the Certification of Thomas Kamvosoulis as Exhibit A.

During this meeting, Barbosa made several representations to Plaintiff regarding her accident and the paperwork he presented her. *See Complaint ¶¶ 30-33*. For example, Barbosa expressly represented to Plaintiff that she needed to sign the documents because they were necessary for Progressive to expedite the processing of her property damage claim. *See Complaint ¶¶ 30, 32*. Barbosa also stated Plaintiff's accident had a questionable issue of liability. *See Complaint ¶ 31*. Based upon these and other representations made by Barbosa, Plaintiff signed the documents as requested. *See Complaint ¶ 33*.

Unbeknownst to Plaintiff, these documents did not only address the property damage claim, they contained a comprehensive general release of all claims against all parties – including Progressive and Favero – for all personal injuries resulting from the accident. *See Complaint ¶¶ 35-36*. Barbosa never mentioned these release provisions to Plaintiff, let alone explained their legal significance. *See Complaint ¶¶ 35-37*. Nor did Barbosa recommend that Plaintiff seek legal counsel to review these documents. *See Complaint ¶ 40*. Rather, Barbosa demanded that Plaintiff sign the documents before he left that day. *See Complaint ¶ 39*. To make matters worse, Barbosa did not even communicate with Plaintiff in Spanish, her native language, during his visit. *See Complaint ¶ 38*.

Plaintiff reasonably relied upon Barbosa's false and misleading statements when she signed the documents presented to her. *See Complaint ¶ 42*. She did not understand that by signing the documents, she was waiving her right to sue Favero for injuries sustained in the accident. *See Complaint ¶ 41*. As a result of these unconscionable business practices, Plaintiff has been deprived of her right to seek personal injury damages against Favero under his insurance policy with Progressive. *See Complaint ¶¶ 41, 44*. Plaintiff has also been deprived of

her right to seek additional benefits under her own Progressive insurance policy arising out of the property damage and personal injuries she suffered. *See Complaint ¶¶ 41, 44.*

## III.    THE SECOND AMENDED CLASS ACTION COMPLAINT

Plaintiff initially filed this action in the Superior Court of New Jersey, Law Division, Somerset County, Docket No.: SOM-L-1588-16, on December 13, 2016.  In the Complaint, Plaintiff sought damages for the personal injuries she suffered as a result of the motor vehicle accident caused by Favero. *See Complaint ¶¶ 8-21.*

Plaintiff filed an Amended Class Action Complaint on January 10, 2017.  In addition to the personal injury claim, Plaintiff asserted a claim against Progressive under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.*, individually and on behalf of all similarly situated policyholders. *See Complaint ¶¶ 22-54.*  Specifically, Plaintiff seeks to represent a class of all present and former Progressive policyholders who were involved in motor vehicle accidents with other Progressive policyholders and were deprived of the right to pursue additional claims and benefits  as a result of Progressive's fraudulent business practices, as  outlined above.  *See Complaint ¶ 23.*

Thereafter, Plaintiff filed a Second Amended Class Action Complaint ("Class Action Complaint") on March 20, 2017, for the sole purpose of naming the proper insurance carrier. Defendants removed this case to the District of New Jersey on April 24, 2017.  This motion followed.[2]

---

[2]    The parties amended the caption to replace "Progressive Insurance Company" with "Progressive Garden State Insurance Company" at the insurance carrier's request.

## LEGAL ARGUMENT

### I.    STANDARD OF REVIEW

Pursuant to Federal Rule of Procedure 12(b)(6), a complaint will be dismissed only if it fails to state a claim upon which relief will be granted.  The court must accept the allegations of the complaint as true and draw reasonable inferences in a light most favorable to the non-moving party.  See Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008).  The moving party bears the burden of showing no claim has been stated.  See Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005).

The factual allegations in a complaint must be sufficient to raise the plaintiff's right to relief above a speculative level, so that the claim is "plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  However, this does not impose a "probability" requirement at the pleading stage.  See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The complaint must only show, through the facts alleged, that the plaintiff is entitled to relief.  See Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009).

Defendants present two arguments in support of their motion:  (1) the CFA does not apply to schemes to defraud policyholders of their benefits; and (2) Plaintiff failed to adequately plead the elements of a CFA claim.  As set forth below, these arguments do not survive scrutiny.

### II.    THE THIRD CIRCUIT HAS EXPRESSLY HELD THE CFA APPLIES TO SCHEMES TO DEFRAUD POLICYHOLDERS OF THEIR BENEFITS

In their moving papers, Defendants claim the CFA does not apply to the fraudulent conduct alleged by Plaintiff.  They argue:

> Plaintiff alleges that Progressive and Barbosa made materially false representations to insureds when those insureds were presented with release documents following accidents involving other Progressive insureds.  These kinds of claims handling practices are governed by regulations for which no private right of action exists, and Plaintiff's CFA claim against Progressive and

> Barbosa should therefore be dismissed.  It is well-settled that the
> CFA does not provide a private right of action against insurers for
> the improper handling of claims.

*Pl. Br. at 5 (internal citations omitted).*   This argument ignores controlling Third Circuit

precedent.

Initially, the Court should not be fooled by Defendants characterizing their fraudulent

conduct as "the improper handling of claims."  To be crystal clear, Defendants are engaging in a

scheme to defraud policyholders of insurance benefits.  The Third Circuit addressed a similar

scheme in Weiss v. First Unum Life Insurance Company, 482 F.3d 254 (3d Cir. 2007).  In

Weiss, the plaintiff alleged his insurer had "embarked on a fraudulent scheme to deny insureds

their rightful benefits" – namely, an "illegal policy of rejecting expensive payouts to disabled

insureds."  Id. at 255, 266.  The District Court dismissed the plaintiff's CFA claim, finding it did

not apply to schemes to defraud policyholders of benefits.  Id. at 266.  On appeal, the Third

Circuit reversed.  Id.

The Third Circuit first noted the New Jersey Supreme Court had never addressed whether

the CFA applied to the conduct alleged.  See id. at 265-66.  As a result, it had to predict how the

New Jersey Supreme Court would rule.  See id. at 266.[3]  After reviewing applicable precedent,

the Third Circuit predicted the New Jersey Supreme Court would find the CFA applied to

schemes to defraud policyholders of their benefits, holding:

> We do not share the District Court's conviction that the CFA and
> its treble damages provision are inapplicable to schemes to defraud
> insureds of their benefits … Here, Weiss has alleged that First
> Unum embarked on a fraudulent scheme to deny insureds their
> rightful benefits, ***clearly an unconscionable commercial practice
> in connection with the performance of its obligations subsequent
> to the sale of merchandise, i.e. the payment of benefits … We
> conclude that while the New Jersey Supreme Court has been***

---

[3]      See Spence v. ESAB Group, Inc., 623 F.3d 212, 216 (3d Cir. 2010) (holding that to ascertain New Jersey law in absence of New Jersey Supreme Court decision, federal court must attempt to predict how it would rule).

> *silent as to this specific application of the CFA, its sweeping statements regarding the application of the CFA to deter and punish deceptive insurance practices makes us question why it would not conclude the performance in the providing of benefits, not just sales, is covered* …

Id. at 266 (emphasis supplied) (internal citations omitted).

Following Weiss, courts in this district have repeatedly found the CFA applies to an insurer's fraudulent conduct in connection with the payment of insurance benefits.  See, e.g., Robert J. v. Liberty Mutual Insurance Co., Civ. A. No. 14-06308, 2015 WL 4138990, at *3 (D.N.J. July 8, 2015) ("This Court will follow Weiss in predicting that the New Jersey Supreme Court would apply the NJCFA to Liberty Mutual's allegedly deceptive conduct in investigating Plaintiffs' property damage."); Bannon v. Allstate Insurance Co., Civ. A. No. 14-1229, 2015 WL 778828, at *4 (D.N.J. Feb. 24, 2015) ("Following the Third Circuit's decision, as noted by Plaintiffs, judges in this District have declined to dismiss insurance payment claims based on the CFA."); Beekman v. Excelsior Insurance Co.,  Civ. A. No. 14-363, 2014 WL 674042, at *2 (D.N.J. Feb. 21, 2014) ("In light of the Third Circuit's holding in Weiss, the Court finds that Plaintiff may bring a claim under the CFA."); Bartels v. Hudson Insurance Co., Civ. A. No. 05-3890, 2008 WL 5070660, at *5 (D.N.J. Nov. 24, 2008) ("Although the Third Circuit found that New Jersey precedent was silent on whether insurance payouts were covered under the CFA, this Court is bound by the prediction in a reported opinion of the Third Circuit that the CFA would cover the provision of insurance benefits.").

The District Court's recent decision in Robert J. is particularly instructive.  In that case, the plaintiffs claimed their insurer engaged in an assortment of deceptive conduct while investigating a property damage claim after Hurricane Sandy.  2015 WL 4138990 at *1.  In their complaint, the plaintiffs alleged the defendant was part of "an ongoing, widespread and continuous scheme to defraud its insureds in the payment of benefits under their policies of

insurance."  Id.  As in this case, the defendant moved to dismiss, arguing the CFA "does not

apply to disputes about insurance benefits or coverage."  Id. at *2.  Citing extensively to Weiss,

the District Court denied the motion to dismiss, holding:

> ***Here, Plaintiffs' NJCFA claim goes to Liberty Mutual's
> subsequent performance of its obligations under the insurance
> contract***.  Plaintiffs do not merely claim that Liberty Mutual
> underpaid their benefits, which would amount only to breach of
> contract, ***but instead assert that Liberty Mutual acted deceptively
> and fraudulently when investigating their property damage***.
> Their NJCFA claim accuses Liberty Mutual of 'telling its
> policyholder that the losses were not covered despite evidence that
> they were,' in 'creating values and assigning them to the covered
> loss to increase its own profitability,' and 'in falsely
> misrepresenting what its responsibilities were under the policy.'
> ***By alleging that Liberty Mutual's investigatory conduct was
> deceptive, Plaintiffs make clear that their NJCFA claim targets
> Liberty Mutual's conduct in performing its contract obligations –
> which distinguishes their NJCFA claim from the type of mere
> underpayment allegation that concerns the New Jersey Appellate
> Division***.

Id. at *3 (emphasis supplied) (internal citations omitted).

So too here, Plaintiff alleges a pattern of deceptive conduct by Defendants in performing

their obligations under the insurance policy.  *See Complaint ¶¶ 28-44*.  Specifically, Plaintiff

alleges Defendants fraudulently induced her into signing "paperwork" that included a

comprehensive general release of all claims against all parties, under the guise that signing this

"paperwork" was necessary to expedite her ***property damage claim***.  *See Complaint ¶¶ 30-36
(emphasis supplied)*.  Defendants never once mentioned to Plaintiff – who was injured in a motor

vehicle accident ***the day before*** – that these release provisions impacted her ability to assert a

***personal injury claim***, let alone explained their legal significance.  *See Complaint ¶¶ 37-41
(emphasis supplied)*.  By misrepresenting the nature of these documents and coercing Plaintiff to

sign them, Defendants undoubtedly engaged in conduct that falls within the ambit of the CFA

under Weiss and its progeny.

As a matter of law, the Third Circuit's decision in Weiss controls the question before the Court.  This notwithstanding, Defendants fail to cite Weiss anywhere in their moving papers.[4]  Instead, they cite a series of cases that involve drastically different facts and legal issues.  For example, Defendants rely heavily upon the New Jersey Appellate Division's decision in Myska v. New Jersey Manufacturers Insurance Co., 440 N.J. Super. 458 (App. Div. 2015).  In Myska, the plaintiff asserted a CFA claim against an insurer *based exclusively upon the denial of coverage for diminution of value damages*.  See id. at 465 (emphasis supplied).  The trial court dismissed the claim based upon well-settled New Jersey precedent holding initial coverage disputes fall outside the ambit of the CFA.  See id. at 484.  The Appellate Division affirmed, but in the process, outlined how the facts in Weiss differed:

> We need not determine the soundness of this legal analysis because the facts in Weiss are significantly distinguishable from those at hand.  The court in Weiss found the CFA applied to allegations of *fraudulent discontinuation of previously authorized benefits*.  The Court did not discuss the precedent we have cited, which excludes determination *of initial coverage disputes*.

Id. at 486 (emphasis supplied).

This case does not involve an "initial coverage dispute" – it involves a fraudulent practice by Defendants aimed at depriving policyholders the full extent of their insurance benefits.  *See Complaint ¶¶ 28-44*.  Suffice to say Myska does not apply here, and the remaining cases cited by Defendants suffer the same fatal flaw.[5]

---

[4]    We do not state this lightly, but respectfully observe that the failure to even mention Weiss calls into question our adversary's duty of candor to this tribunal.  See RPC 3.3(a)(3) (stating lawyer shall not "fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client").

[5]    See, e.g., Van Holt v. Liberty Mutual Insurance Co., 163 F.3d 161, 168 (3d Cir. 1998) ("The mere denial of insurance benefits to which the plaintiffs believed they were entitled does not comprise an unconscionable commercial practice."); Nationwide Mutual Insurance Co. v. Caris, 170 F. Supp.3d 740, 746 (D.N.J. 2016) (dismissing CFA claim based upon initial denial of coverage); Pierzga v. Ohio Casualty Insurance Co., 208 N.J. Super. 40, 47 (App. Div. 1986) (same).

Because the unlawful conduct alleged by Plaintiff falls squarely within the confines of the CFA under controlling precedent, the motion to dismiss must be denied.

## III.   PLAINTIFF EASILY SATISFIES THE ELEMENTS OF A CFA CLAIM IN THE CLASS ACTION COMPLAINT

Defendants also argue Plaintiff has failed to satisfy the elements of a CFA claim in the Class Action Complaint.  Not so.

The New Jersey Supreme Court has repeatedly held the CFA "is remedial legislation" that courts must "construe liberally to accomplish its broad purpose of safeguarding the public." Furst v. Einstein Moomjy, Inc., 182 N.J. 1, 11-12 (2004); see Cox v. Sears Roebuck & Co., 138 N.J. 2, 15 (1994).  In relevant part, the CFA prohibits the following conduct:

> *The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation*, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, *or with the subsequent performance of such person* as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice.

N.J.S.A. 56:8-2 (emphasis supplied).  It is well-settled motions to dismiss CFA claims must be approached with hesitation.  See, e.g., Francis E. Parker Memorial Home, Inc. v. Georgia-Pacific LLC, 945 F. Supp.2d 543, 561 (D.N.J. 2013); Dewey v. Volkswagen AG, 558 F. Supp.2d 505, 525 (D.N.J. 2008).

To state a claim under the CFA, a plaintiff must satisfy three elements:  (1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a casual relationship between the unlawful conduct and the ascertainable loss.  Ramirez v. STI Prepaid LLC, 644 F. Supp.2d 496, 501 (D.N.J. 2009); Gonzalez v. Wilshire Credit Corp., 207 N.J. 557, 576 (2011).  Plaintiff easily satisfies these elements, as follows.

## A.      Defendants Engaged In Unlawful Conduct Under The CFA

In the Class Action Complaint, Plaintiff alleges Defendants engaged in a fraudulent scheme to deprive her of the full extent of her insurance benefits by:  (1) personally visiting her the day after her motor vehicle accident; (2) falsely representing to her that certain "paperwork" had to be signed immediately to expedite the claims process; (3) presenting her with documents including a comprehensive general release of all claims against all parties, including Progressive; (4) failing to advise her of the release provisions or their legal significance; and (5) inducing her to sign the documents by promising it would facilitate prompt payment.  *See Complaint ¶¶ 28-44*.   This pattern of conduct constitutes "deception, fraud, false pretense, false promise, misrepresentation … in connection with … the subsequent performance" of the obligations Defendants had under Plaintiff's insurance policy.   N.J.S.A. 56:8-2.   This satisfies the first element of a CFA claim.   See Weiss, 482 F.3d at 266 (holding scheme to deprive insured of benefits falls within CFA); Robert J., 2015 WL 4138990, at *3 (same).

## B.      Plaintiff Suffered Ascertainable Loss Because She Was Defrauded Out Of The Full Extent Of Her Available Insurance Benefits

While courts have been hesitant to define ascertainable loss with precision, the Third Circuit has explained that "a plaintiff is not required to show monetary loss, but only that he purchased something and received less than what was promised."   Marcus v. BMW of North America, LLC, 687 F.3d 583, 605-06 (3d Cir. 2012) (internal citations omitted).   The District of New Jersey has similarly held that ascertainable loss has been "broadly defined as embracing more than a monetary loss … when a consumer receives less than what was promised."   Ramirez, 644 F. Supp.2d at 501.   New Jersey state courts agree.   See Union Ink Co., Inc. v. AT&T Corp., 352 N.J. Super. 617, 646 (App. Div. 2002); Miller v. American Family Publishers, 284 N.J. Super. 67, 89-90 (Ch. Div. 1995).

Here, Plaintiff alleges that as a result of Progressive's unlawful scheme she was deprived the full extent of the insurance benefits available to her.  *See Complaint ¶¶ 41, 44*.  These include:  (1) benefits for personal injuries and property damage under Favero's insurance policy with Progressive; and (2) benefits for personal injuries and property damage under her insurance policy with Progressive.  *See Complaint ¶¶ 41, 44*.  The specific amount of lost insurance benefits will be based upon the coverage limits in the applicable insurance policies and calculated more precisely after discovery.  At the pleading stage, however, Plaintiff's allegations of lost insurance benefits easily satisfy the "ascertainable loss" requirement.  See, e.g., Dzielak v. Whirlpool Corp., 26 F. Supp.3d 304, 336 (D.N.J. 2014) ("The precise amount of loss need not be known; it need only be measurable."); Maniscalco v. Brother International Corp., 627 F. Supp.2d 494, 503 (D.N.J. 2009) ("Although the loss must be ascertainable, no special specificity with regard to pleading ascertainable loss is required."); Tirri v. Flagship Resort Development Corp., Civ. A. No. 3:16-1771, 2016 WL 6123146, at *4 (D.N.J. Oct. 19, 2016) ("Plaintiffs need only provide enough specificity to give the defendant notice of damages … to overcome a motion to dismiss"); Giordano v. Saxon Mortgage Services, Inc., Civ. A. No. 12-7937, 2014 WL 4897190, at *6 (D.N.J. Sept. 30, 2014) (same).[6]

Indeed, Plaintiff has alleged Progressive failed to provide her "what was promised" – *i.e.* the benefit of her bargain under her insurance policy.  See, e.g., Marcus, 687 F.3d at 605-06; Ramirez, 644 F. Supp.2d at 501; Union Ink, 352 N.J. Super. at 646; Miller, 284 N.J. Super. at 89-90.  "That is all that is required to establish ascertainable loss" at the pleadings stage. Dzielak, 26 F. Supp. 3d at 336 (internal citations omitted); see Volin v. General Electric Company, 189 F. Supp.3d 411, 419 (D.N.J. 2016) (nothing ascertainable loss occurs "when a

---

[6]     Defendants spend the last page of their brief arguing Plaintiff failed to adequately plead ascertainable loss, claiming her allegations of lost insurance benefits are speculative.  This argument does not merit extended discussion.  Suffice to say the cases cited by Plaintiff establish that at the pleading stage she has satisfied her burden.

consumer receives less than what was promised") (internal citations omitted). Accordingly, Plaintiff has satisfied the second element of a CFA claim.[7]

### C. Plaintiff Has Sufficiently Alleged A Causal Connection Between The Unlawful Conduct And The Loss Of Insurance Benefits

Finally, Plaintiff has sufficiently alleged causation. Specifically, Plaintiff alleges that as a direct result of Defendants misrepresenting the nature of the documents she executed – and failing to disclose the release provisions and their legal significance – she was deprived insurance benefits for personal injuries and property damage under Favero's policy, her policy, or both. *See Complaint ¶¶ 41, 44.* These allegations set forth a causal nexus between unlawful conduct and the ascertainable loss. See Harnish v. Widener University School of Law, 931 F. Supp.2d 641, 651 (D.N.J. 2013) (holding CFA intended to promote "the disclosure of relevant information to enable the consumer to make intelligent decisions.") (internal citations omitted); Farley v. GameStop Corp., Civ. A. No. 12-4734, 2013 WL 4042434, at *5 (D.N.J. Aug. 7, 2013) (holding plaintiffs satisfied causal nexus requirement by alleging they were misled by defendants and "received less than they expected"). Therefore, Plaintiff satisfies this element as well.[8]

## IV.    IN THE EVENT THE COURT FINDS PLAINTIFF'S CFA CLAIM TO BE DEFICIENT, LEAVE TO FILE A CURATIVE AMENDMENT SHOULD BE GRANTED

As discussed *supra*, Plaintiff has sufficiently pleaded a cause of action under the CFA. In the event the Court finds otherwise, the "District Court must permit a curative amendment, unless an amendment would be inequitable or futile." Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004); Clements v. Sanofi-Aventis, U.S., Inc., 111 F. Supp.3d 586, 603 (D.N.J. 2015).

---

[7] It also bears noting that, under Weiss and its progeny, schemes to defraud policyholders of their insurance benefits fall squarely within the CFA. None of those cases suggest allegations of lost insurance benefits fail to satisfy the ascertainable loss requirement.

[8] Notably, Defendants do not address this element in their opposition papers.

Thus, Plaintiff hereby requests leave to file a curative amendment should the Court deem it necessary.

## <u>CONCLUSION</u>

Plaintiff has clearly and concisely alleged a CFA claim in a manner consistent with controlling precedent.  As a result, the Motion to Dismiss for Failure to State a Claim filed by Defendants must denied in its entirety.


**BRACH EICHLER LLC**


By:     <u>*/s/ Thomas Kamvosoulis*</u>
        Charles X. Gormally, Esq.
        Thomas Kamvosoulis, Esq.


Dated:  May 22, 2017